IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ALTON RAY ROBERTSON, JR. PLAINTIFF

v. Civil No. 6:17-cv-06064

SHERIFF MIKE McCORMICK,
Garland County, Arkansas, *et al*. DEFENDANTS

## **MEMORANDUM OPINION**

This is a civil rights action filed *pro* se by Plaintiff, Alton Ray Robertson, Jr., under 42 U.S.C. § 1983. Before the Court is a Motion for Summary Judgment filed by Separate Defendants Kay Duke, Carol Gray, Danny Burgin, Brittany Darnell, and Rebecca Rioza. (ECF No. 122). Also before the Court is a Motion for Summary Judgment filed by Southwest Correctional Medical Group, Inc. ("SWCMG"). (ECF No. 125). Likewise before the Court is a Motion for Summary Judgment filed by Separate Defendants Lieutenant Amanda Miller, Sergeant Michael Carter, Deputy Lisa Thomas, Deputy Kolby Hamilton, Corporal Shawn Stapleton, Deputy Jason Stovall, Deputy Russell Braswell, Deputy William Coutch, and Deputy Ruey Hendrix, all of whom are employed by Garland County, Arkansas. (ECF No. 128). Plaintiff has not filed a response to the motions and the time to do so has passed.[1] The Court finds these matters ripe for consideration.

## **I. BACKGROUND**

Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC") – Grimes Unit in Newport, Arkansas. His claims arise from alleged incidents that occurred in

---

[1] On March 8, 2019, Plaintiff was granted an extension until April 22, 2019 to respond to the motions. (ECF No. 135). On April 22, 2019, Plaintiff requested an indefinite extension to respond to the motions. On April 24, 2019, the Court denied Plaintiff's second request for an extension.

September 2016 while he was incarcerated in the Garland County Detention Center ("GCDC") serving a sentence as a result of a judgment of conviction. (ECF No. 12, p. 1). Based on Plaintiff's verified Amended Complaint (ECF No. 12) and Defendants' filings, the relevant facts are as follows.[2]

Plaintiff was booked into the GCDC on September 6, 2016, at approximately 8:00 p.m. (ECF No. 130-1). The booking officer noted that Plaintiff had a history of psoriasis, a skin condition that creates scaly, red patches on the skin that are itchy, sometimes painful, and may result in bleeding. (ECF Nos. 125-2, 130-2). Psoriasis is a chronic disease for which there is no cure. (ECF No. 125-2). Some of the most frequently prescribed medications for treating psoriasis are corticosteroids. *Id.* at p. 2. They reduce inflammation and relieve itching. *Id.* Vitamin D is also commonly prescribed to treat psoriasis. It slows skin cell growth during a flare up. *Id.*

On September 12, 2016, Plaintiff made a resident request report to GCDC medical staff stating he had advised personnel of his medical conditions and the medication he was prescribed. (ECF No. 125-2, p. 19). Plaintiff did not state he was experiencing any problems at that time. *Id.* On September 13, 2016, Plaintiff made another resident request report to GCDC staff stating, "I [need] MY MEDS KLONZOPAM 2 MG LINCINEPRIL 25 MS VISTIRL 25 MGS NEXIUM 40 MGS HAVE NOT HAD [any] SINCE SEP 8th [need] MEDS BAD HAVING [outbreak]." (ECF No. 125-2, p. 20). That same day, Plaintiff was seen and assessed by Kay Duke, an Advanced Practice Registered Nurse ("APRN"). Plaintiff's chief complaint was psoriasis of the hands and chest. (ECF No. 125-2, p. 18). Following the physical examination, Duke diagnosed Plaintiff with psoriasis on his arms, hands, and chest. She ordered Triamcinolone 0.1%, a corticosteroid

---

[2] A verified complaint is the equivalent of an affidavit for summary judgment purposes. *See Roberson v. Hayti Police Dept't.*, 241 F.3d 992, 994-95 (8th Cir. 2001).

2

used topically to treat psoriasis, to be given twice daily for fourteen days. *Id.* Duke noted that Plaintiff was to receive his Triamcinolone off the medical cart until the medication tub arrived. *Id.* Plaintiff was seen again by Duke on September 15, 2016. Duke noted that Plaintiff's medication tub had not yet arrived and Plaintiff was complaining of increased itching. (ECF No. 125-2, p. 18). Duke performed another physical examination on Plaintiff and noted that nothing had changed since the examination on September 13, 2016. *Id.*

On September 16, 2016, Nurse Danny Burgin noted that a provider ordered Vitamin D3 for Plaintiff to be taken twice daily for fourteen days. (ECF No. 125-2, p. 18). Burgin also completed an intake screening and assessment of Plaintiff at that time. *Id.*

On September 18, 2016, Plaintiff submitted a grievance form to the GCDC jail administration, stating that he had put in multiple sick calls on the same issues and that he had "huge" welts and fever and needed medical attention as soon as possible. (ECF No. 130-3, p. 1). Nurse Melissa Jarrett responded, instructing Plaintiff to place a sick call to be seen by medical, and stating, "You have been seen for all complaints in the sick call process." *Id.* On September 19, 2016, Plaintiff filed another grievance, claiming he needed medical attention. (ECF No. 125-2, p. 23). Plaintiff received a response to his grievance from Nurse Jarrett again, stating he had been seen for all his complaints in the sick call process. *Id.* Although an appeal was available to him, Plaintiff did not appeal the response to his grievance. *Id.*

On September 23, 2016, Plaintiff filed another grievance, claiming that his psoriasis was "very bad." (ECF No. 125-2, p. 24). Nurse Jarrett responded to Plaintiff's grievance, advising Plaintiff to place a sick call to be seen again for his complaints and advising Plaintiff that he had already been seen by an Advanced Practice Nurse and given medication for his ailments. *Id.*

3

Plaintiff did not appeal the response to this grievance. *Id.*

On September 23, 2016, Plaintiff also made a resident request report to the GCDC staff, claiming that his condition was getting worse and that it had spread to his genitals, was causing him to lose sleep, and the cream he had received for treatment was not working. (ECF No. 125-2, p. 21). An unknown GCDC officer responded stating, "Already addressed on previous complaint. Need to go to pill call for medication as ordered. That means getting up for morning pill pass." *Id.*

On September 25, 2016, a progress note was made in Plaintiff's medical chart by Nurse Burgin which reads:

> Called to barracks, I/M [Plaintiff] sitting in day room with boxers down around ankles. Stated no one will do anything about the psoriasis – refusing to take meds prescribed by provider. Deputys [sic] escorted I/M to other barracks. States he wants to see a doctor that knows what they are doing. I/M smells of urine. Refusing meds.

(ECF No. 125-2, p. 18). That same day, Nurse Burgin noted that he spoke with APRN Carl Ennis, who ordered Prednisone 20 MG and Benadryl 25 MG for Plaintiff to take twice daily for five days. *Id.* Ennis directed that Plaintiff should continue to be monitored for any changes. *Id.*[3] Plaintiff's medication distribution logs reflect that he frequently missed morning and evening pill call and was therefore unable to receive his various medications. (ECF No. 130-5, pp.1-3).

One of the last entries in Plaintiff's medical chart is a physical examination and health appraisal of Plaintiff performed on September 26, 2016, by Michelle Reeves, a Registered Nurse. (ECF No. 125-2, p. 26). Although Nurse Reeves' examination identified Plaintiff's psoriasis, she also noted that Plaintiff had no complaints regarding it or any other condition. *Id.* The physical

---

[3] Prednisone is a type of corticosteroid that is useful in treating psoriasis. Benadryl is an antihistamine commonly used to reduce itching and can also be used to help someone relax and fall asleep. (ECF No. 125-2, p. 5).

examination and assessment by Reeves also revealed "no significant medical, mental health, or dental issues currently." *Id.*

The GCDC has policies and procedures in place to provide continuity of medical care for all inmates housed in the facility. (ECF No. 130-6). Pursuant to policy, inmates are provided unimpeded access to care by ensuring inmates' written health complaints are solicited daily, triaged by health professionals, and followed up with appropriate treatment by qualified health personnel. *Id.* Clinical services are available five times a week and are performed by a physician or other qualified health professional. *Id.* Twenty-four hour emergency health care is available to inmates who need such care, and it is policy at the GCDC to provide needed medical care to all inmates. *Id.*

At all times relevant, SWCMG was under contract with the GCDC to provide healthcare services to inmates housed at the GCDC. Separate Defendants Kay Duke, Carol Grey, Danny Burgin, Brittany Darnell, and Rebecca Rioza were all employees of SWCMG. (ECF No. 126).[4]

The GCDC also has an established policy and procedure for the submission of inmate grievances which requires that the inmate or detainee give written notice of a complaint, request, or problem through an inmate grievance form. (ECF No. 130-6, pp. 2-4). If an inmate is not satisfied with the decision of the Grievance Coordinator or other staff who responded to the grievance, the inmate may appeal the decision to the Security Director within five days of the inmate's receipt of the response. *Id.* at p. 3.

Plaintiff filed his initial Complaint on July 20, 2017, alleging he had been denied medical care by the Sheriff of Garland County, Arkansas, and numerous John and Jane Doe officers and

---

[4] The Court notes that no policy of SWCMG has been made a part of the summary judgment record.

medical personnel who worked at the GCDC. (ECF No. 1).[5] On September 27, 2017, Plaintiff filed an Amended Complaint naming as Defendants Sheriff Mike McCormick and numerous John and Jane Doe defendants at the GCDC who had knowledge of Plaintiff's medical condition in September 2016. (ECF No. 12). Eventually, the following individuals/entities were named as Defendants and served with process: (1) Sheriff Mike McCormick, Grievance Coordinator Destiny Donahue, Jail Administrator Steven Elrod, Deputy Leonard Coatney, Lieutenant Amanda Miller, Sergeant Michael Carter, Deputy Lisa Thomas, Deputy Kolby Hamilton, Corporal Shawn Stapleton, Deputy Jason Stovall, Deputy Russel Braswell, Deputy William Coutch, Deputy Ruey Hendrix, Midkiff, Deputy Lacey, and Deputy Nathan Burgett (collectively the "Garland County Defendants"); (2) SWCMG; and, (3) Kay Duke, Carol Gray, Nurse Danny Burgin, Brittany Darnell, and Nurse Rebecca Rioza (collectively the "SWCMG Employees").[6]

In his Amended Complaint, Plaintiff alleges the Garland County Defendants, SWCMG and the SWCMG Employees denied him medical care on September 8, 2016. (ECF No. 12). Specifically, he claims that he:

> requested on several occasions to be escorted to medical and was told to place a sick call request. Several sick call requests were done but were never responded to. The rash and itching became worse and I lost sleep, suffered anxiety, bled from the sores on my body, for nearly ten (10) days[.]

Plaintiff likewise asserts that:

> Each Defendant was informed about my medical condition directly and indirectly, by verbal and written requests, and was still denied medical help. By denying medical help, Plaintiff suffered ten (10) days of pain, loss of sleep, both mental and

---

[5] Plaintiff mistakenly identified the Sheriff of Garland County as Tim Stockdale in his initial Complaint. Because Plaintiff did not submit his complaint on the Court's approved form, the Court ordered Plaintiff to file a supplement to his Complaint. (ECF No. 5). On August 4, 2017, Plaintiff filed his Supplement. (ECF No. 7). On August 22, 2017, the Court ordered Plaintiff to file an Amended Complaint because Plaintiff incorrectly filled out the Court's form. (ECF No. 8).

[6] Health Services Administrator Melissa Jarrett and Nurse Michelle Reeves were named as Defendants but were never served with process. Carol Gray was mistakenly listed as Carol Grey.

6

physical pain[.]

(ECF No. 12, pp. 6-7). Plaintiff also lists a third claim for "due process." He states that:

> By not answering Plaintiff's numerous request for medical help, the Defendants violated his Due Process rights. There is a policy procedures in place that provides employees the proper procedures when medical request are being made. By not following these rules, this violates Plaintiff's Due process rights[.]

*Id.* at p. 8. Plaintiff sues all Defendants in their individual and official capacities. He seeks compensatory and punitive damages.

On February 28, 2019, all Defendants filed motions for summary judgment. The SWCMG Employees assert they are entitled to summary judgment because: (1) the SWCMG Employees were not deliberately indifferent to Plaintiff's medical needs; (2) Plaintiff's claims under Arkansas law fail because Plaintiff cannot produce the expert witness testimony required by the Arkansas Medical Malpractice Act; and (3) Plaintiff failed to exhaust his administrative remedies regarding his claims. (ECF Nos. 123, 124). Defendant SWCMG argues it is entitled to summary judgment because: (1) Plaintiff was not injured by an unconstitutional policy or custom of SWCMG; and, (2) Plaintiff's state-law claims are premised solely on the doctrine of *respondeat superior*. (ECF Nos. 125, 126). The Garland County Defendants argue they are entitled to summary judgment because: (1) they were not deliberately indifferent to Plaintiff's medical needs; (2) no policy or custom of the GCDC contributed to a violation of Plaintiff's constitutional rights; and (3) they are entitled to qualified immunity. (ECF Nos. 128, 129).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

The Court will address Defendants' various arguments in turn.

#### A. Failure to Exhaust Administrative Remedies

The Court will first address the SWCMG Employees' argument that Plaintiff failed to exhaust his administrative remedies with respect to his claims for denial of medical care and due process.

The Prison Litigation Reform Act ("PLRA") at 42 U.S.C. § 1997e(a) provides that: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

8

administrative remedies as are available are exhausted." Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id*. at 218 (internal quotation marks and citation omitted). The Eighth Circuit has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures, or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (explaining a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)).

A review of the summary judgment record confirms that Plaintiff did not appeal the responses from the GCDC staff to the grievances he submitted in accordance with the GCDC's grievance procedure. (ECF No. 122-2, pp. 23-24). In addition, Plaintiff has not presented any evidence that any of the Defendants prevented him from utilizing the grievance procedure or failed to comply with the procedure themselves. Accordingly, for this reason alone, the Garland County Defendants, SWCMG, and the SWCMG Employees are entitled to summary judgment on Plaintiff's claims that he was denied medical care and due process.[7] That being said, a review of the summary judgment record confirms that all Defendants are entitled to summary judgment on the merits as well.[8]

---

[7] Determination that Plaintiff's claims are barred for failure to exhaust his administrative remedies under the PLRA applies equally to all Defendants. *See Angelo Iafrate Constr. LLC v. Potashnick Constr., Inc.*, 370 F.3d 715, 722 (8th Cir. 2004).

[8] Claims that are dismissed for failure to exhaust administrative remedies should be dismissed without prejudice. *See*

## B. Denial of Medical Care

Plaintiff alleges the Garland County Defendants, the SWCMG Employees, and SWCMG denied him adequate medical care in September 2016. (ECF No. 12, pp. 6-7).

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). "[D]elays in treating painful medical conditions, even if not life-threatening, may support an Eighth Amendment claim." *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (citing *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009)). Defendants do not dispute that Plaintiff's psoriasis is a serious medical condition. Accordingly, the Court assumes for purposes of this opinion that Plaintiff suffers from a serious medical condition. Therefore, the question before the Court is whether Defendants' actions, or lack thereof, rose to the level of a constitutional violation.

---

*Sergent v. Norris*, 330 F.3d 1084, 1085 (8th Cir. 2003).

To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted). A plaintiff must show that an official "actually knew of but deliberately disregarded his serious medical need." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006).

The record reflects that the GCDC medical staff reviewed Plaintiff's health complaints—usually on the same day he submitted his complaints—on at least seven occasions between September 13 and September 26, 2016. The staff prescribed Triamcinolone, and later, when Plaintiff's primary physician provided medication orders for the GCDC, a prescription for Vitamin D3. In addition, the record indicates that Prednisone 20 MG and Benadryl 25 MG were ordered for Plaintiff. On September 25, 2016, GCDC staff noted that GCDC deputies escorted Plaintiff to the medical unit where he refused to take the medication prescribed for him. The record also reflects that Plaintiff did not show up for pill call on numerous occasions and, for this reason, did not receive his medication.

Accordingly, upon review of the record, there is no evidence that any of the Defendants were deliberately indifferent to Plaintiff's medical needs. Therefore, all Defendants are entitled to summary judgment on Plaintiff's claims that he was denied medical care at the GCDC in September 2016.

**C. Due Process Claim**

Plaintiff also asserts a due process claim based on the alleged refusal of Defendants to respond to his requests for medical care. The Supreme Court has explained, "[i]f a constitutional

claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (quoting *Lanier v. United States*, 520 U.S. 259, 272 n.7 (1997)); *see also Graham v. Poole*, 476 F. Supp. 2d 257, 260-61 (W.D.N.Y. 2007) (holding that when a prisoner's "deliberate indifference claim is covered by the Eighth Amendment, the substantive due process claims are duplicative" and thus "the substantive due process claims [should be] dismissed") (quotations and citations omitted). Accordingly, the Court construes this claim as one for denial of medical care under the Eighth Amendment. The Court has already determined that Plaintiff's Eighth Amendment claim fails. Thus, Plaintiff's due process claim also fails and must be dismissed as a matter of law.[9]

### D. State Law Claim for Medical Malpractice

The Arkansas Medical Malpractice Act "applies to all causes of action for medical injury" and "shall supersede any inconsistent provision of law." Ark. Code Ann. § 16-114-202. "Medical injury" is broadly defined to include "any adverse consequences arising out of or sustained in the course of the professional services being rendered by a medical care provider." Ark. Code Ann. § 16-114-201(3). Thus, the Medical Malpractice Act governs in place of claims for ordinary negligence or other common-law torts when the plaintiff is seeking to recover for a "medical injury." *See Dodson v. Charter Behavioral Health Sys. of Nw. Ark., Inc.*, 983 S.W.2d 98, 102 (Ark. 1998).

---

[9] If Plaintiff had been a pretrial detainee at the time of the alleged denial of medical treatment, the claim would be analyzed under the due process clause of the Fourteenth Amendment, but the claim would still be subject to the deliberate indifference standard in the Eighth Amendment. U.S.C.A. Const. Amends. 8, 14: 42 U.S.C. § 1983. In this circuit, the standard applied to Eighth and Fourteenth Amendment claims is deliberate indifference on the part of defendants. *Whitnack v. Douglas Cnty., Neb.*, 16 F.3d 954, 957 (8th Cir. 1994).

When the Medical Malpractice Act governs, the plaintiff must prove: (1) the standard of care for medical care providers in Garland County or a similar locality, (2) a breach of that standard of care, and (3) that any breach was the proximate cause of the plaintiff's damages. Ark. Code Ann. § 16-114-206(a)(1)-(3). Expert testimony is necessary in any medical malpractice case "when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge." *Robson v. Tinnin*, 911 S.W.2d 246, 249 (Ark. 1995).[10] Further, expert opinions as to these issues must be stated within a reasonable degree of medical certainty or probability. *Watts v. St. Edward Mercy Med. Ctr.*, 49 S.W.3d 149 (Ark. Ct. App. 2001). "The proof required to survive a motion for summary judgment in a medical malpractice case must be in the form of expert testimony." *Ford v. St. Paul Fire & Marine Ins. Co.*, 5 S.W.3d 460, 462 (Ark. 1999). Without expert support, a plaintiff's cause of action fails, and summary judgment is proper.

The proper method of diagnosing and treating psoriasis does not lie within a jury's comprehension as a mater of common knowledge. Most cases in Arkansas hold that expert medical testimony is necessary because alleged medical negligence is not within the comprehension of a jury of laymen. *See, e.g.*, *Fryar v. Touchstone Physical Therapy, Inc.*, 229 S.W.3d 7, 12-13 (Ark. 2006) (connection between pre-existing neck and spine injuries and alleged injuries caused by an unlicensed chiropractor's treatment "would not be a matter of common knowledge or understanding"); *see also Eady v. Lansford*, 92 S.W.3d 57 (Ark. 2002) (expert testimony required to rebut defense testimony regarding whether a physician has a duty to inform a patient about rare side effects of a medication).

---

[10] In *Broussard v. St. Edward Mercy Health System, Inc.*, 386 S.W.3d 385 (Ark. 2012), the Arkansas Supreme Court struck down a portion of the Arkansas Medical Malpractice Act requiring the expert testimony be provided only by a medical care provider of the same specialty as the defendant. The remainder of section 16-114-206 (a)(1) and (2) was unaffected and remains controlling in this case.

13

Therefore, Plaintiff's pendent state-law claim will require expert testimony on each essential element. Plaintiff has not identified any expert who will testify as to the standard of care applicable to the SWCMG Employees, their alleged breach of that standard, or causation. Moreover, the SWCMG employees' expert, Dr. Darren Flamik, submitted an affidavit stating the SWCMG Employees satisfied the standard of care when treating Plaintiff and that no act or omission on their part caused any of Plaintiff's alleged injuries. (ECF No. 125-2, p. 6).

Plaintiff has not presented any expert testimony to demonstrate the existence of a genuine issue of material fact to support his medical-malpractice claim. Accordingly, the SWCMG Employee Defendants are entitled to judgment as a matter of law on any claims arising under Arkansas law.

### E. Official Capacity Claims

Plaintiff also sues Defendants in their official capacities. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against the Garland County Defendants are treated as claims against Garland County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010). "[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish any liability on the part of Garland County under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate

choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Likewise, when a government contracts with a third party to fulfill a constitutional duty—such as providing medical care—official capacity claims against the third-party's employees are treated as claims against the third party itself. *See Cannady v. Cradduck*, 2016 WL 4432704, at *1-2 (W.D. Ark. Aug. 18, 2016) (finding that official capacity claims against employees of a third-party medical provider are treated as claims against the provider because the county contracted with the provider to provide healthcare to county prisoners). Thus, Plaintiff's official capacity claims against the SWCMG Employees are claims against their employer—SWCMG. To sustain an official capacity claim against such an entity, a plaintiff "must show that there was a policy custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (involving a section 1983 claim against a prison medical provider); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993) ("[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies."). Thus, Plaintiff's official capacity claims against the SWCMG Employees are "functionally equivalent" to alleging that their employer, SWCMG, had "a policy, custom, or [took an] official action" that deprived him of constitutionally adequate medical care. *Veatch*, 627 F.3d at 1275; *Johnson*, 452 F.3d at 973.

Here, Plaintiff has failed to produce evidence of any policy, custom, or practice of Garland County or SWCMG that contributed to the alleged violation of his constitutional rights. Accordingly, all Defendants are entitled to summary judgment on Plaintiff's claims against them in their official capacities.

## IV. CONCLUSION

For the reasons stated above, the Motions for Summary Judgment filed by the Garland County Defendants, the SWCMG Employees, and SWCMG (ECF Nos. 122, 125, 128) should be and hereby are **GRANTED**.  This matter is hereby **DISMISSED WITH PREJUDICE**.

A judgment of even date consistent with this opinion shall issue.

**IT IS SO ORDERED,** this 6th day of May, 2019.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge